**04-1021C**

---

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

---

**C.H. ROBINSON INTERNATIONAL,**

**Plaintiff-Appellant,**

**v.**

**THE UNITED STATES,**

**Defendant-Appellee.**

---

# PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION TO DISMISS

---

**Curtis W. Knauss**
**John M. Peterson**
**Neville Peterson LLP**
**Counsel for Plaintiff C.H. Robinson International**
**17 State Street, Suite 1900**
**New York, NY 10004**
**212-635-2730**

**Dated: November 16, 2004**

# TABLE OF CONTENTS

Table of Authorities . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iii

Response to Motion to Dismiss . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

I. Introduction . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II. Background . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

III. Argument . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

A. The Court has Subject Matter Jurisdiction Over Plaintiff's Claim . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

B. Plaintiff Did Not Waive its Right to Judicial Review . . . . . . . . . . 12

IV. Conclusion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

# TABLE OF AUTHORITIES

**CASES**

*Bridalane Fashions Inc. v. United States*, 32 F. Supp. 2d 466 (Ct. Int'l Tr. 1998) . . . . . . . . . . . 7

*Brother International Inc. v. United States*, 246 F. Supp. 2d 1318 (2003) . . . . . . .. . . . . . . . . . 11

*Byung Wu Lee v. United States*, 329 F.2d 817 (Fed. Cir. 1993) . . . . . . . . . . . . . . . . . . . . . . . . 10

*Demarco Durzo Dev. Co. v. United States*, 60 Fed. Cl. 632 (2004) . . . . . . . . . . . . . . . . . . . . . 14

*Dudley v. United States*, 61 Fed. Cl. 685 (2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*E.F. Hutton Co. v. Helm*, 263 Kan. 603, 694 P.2d 445, 451 (Kan . 1985) . . . . . . . . . . . . . . . . . 14

*Forest Products Northwest Inc. v. United States*, 62 Fed. Cl. 109 (September 17, 2004) . . . . . 10

*K-Mart Corp. v. Cartier, Inc.*, 485 U.S. 176 (1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Miami Free Zone Corp. v. United States*, 17 Ct. Int'l Trade 687 , 826 F.Supp. 526 (1993) . . . . 7

*Okerlund v. United States*, 53 Fed. Cl. 341(2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Pueblo Bank & Trust Co. v. Steele,* 110 F.3d 74 (10th Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . 14

*Shiepe v. United States*, 866 F. Supp. 1430 (Ct. Int'l Tr. 1994) . . . . . . . . . . . . . . . . . . . . . . . . 7

*Trayco, Inc. v. United States*, 994 F.2d 832 (Fed. Cir. 1993) . . . . . . . . . . . . . . . . . . . . . . . passim

*Trayco, Inc. v. United States*, 967 F.2d 97 (4th Cir. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*United States v. Ricci*, 985 F. Supp. 125, 126-27 (Ct. Int'l Trade 1997) . . . . . . . . . . . . . . . . . . . 11

*United States v. Universal Fruits and Vegetables Corp.*, 362 F.3d 551 (9th Cir. 2004) . . . . . . . 11

**Statutes**

28 U.S.C. § 1295(a)(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

28 U.S.C. § 1346(a)(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

19 U.S.C. §1491 . . . . . . . . . . 3,4

19 U.S.C. § 1514 . . . . . . . . . . 13

28 U.S.C. §§1581-1583 . . . . . . . . . . 3

28 U.S.C. §1581(a) . . . . . . . . . . 5

28 U.S.C. §1581(I) . . . . . . . . . . passim

28 U.S.C. §1582 . . . . . . . . . . 7

19 U.S.C. § 1592(a), (c). . . . . . . . . . 8-10

**Regulations**

19 C.F.R. §18.8 . . . . . . . . . . 2

19 C.F.R. § 172.22 . . . . . . . . . . 12-16

# UNITED STATES COURT OF FEDERAL CLAIMS

**BEFORE: EDWARD J. DAMICH, CHIEF JUDGE**

| | | |
|---|---|---|
| **C. H. ROBINSON INTERNATIONAL,** | ) | |
| **Plaintiff,** | ) | |
| **v.** | ) | **Court No. 04-1021C** |
| **THE UNITED STATES,** | ) | |
| **Defendant.** | ) | |

## PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION TO DISMISS

## I. INTRODUCTION

On behalf of C.H. Robinson International ("C.H. Robinson"), undersigned counsel hereby submits its response to defendant's motion to dismiss. Defendant has misapprehended the pertinent regulations and case precedent in its motion to dismiss. This Court has subject matter jurisdiction over plaintiff's claim, based on the governing statue and case precedent. Plaintiff's claim also presents a judicable question because it did not waive its right to judicial review by submitting payment on defendant's liquidated damage claim. For these reasons, detailed below, defendant's motion should be denied.

## II. BACKGROUND

C.H. Robinson, a licensed Customhouse broker and bonded Customs carrier, transported three (3) containers of garments from the port of Los Angeles, California to Laredo,

Texas, pursuant to bonded "Transportation & Exportation" entries. Plaintiff transported the goods to Laredo, and delivered them to Mario Pena-Gonzalez, a Mexican Customs broker designated to receive the goods and effect their exportation to Mexico. The broker effected the exportation of the goods, and provided C.H. Robinson with proof of exportation in the form of Mexican Customs entries ("pedimentos") showing the date and place of crossing into Mexico. These pedimentos were stamped by Mexican Customs authorities in Nuevo, Laredo, Tamaliupas, and copies were provided to C.H. Robinson. See Appendix attached to Defendant's *Motion to Dismiss*, at p. 15-20.

The United States Customs Service (now United States Customs and Border Protection) assessed three (3) claims against C.H. Robinson for liquidated damages under the Transportation & Exportation bonds, charging the carrier with misdelivery of the merchandise in violation of 19 C.F.R. §18.8. According to the *Notices of Penalty or Liquidated Damages* (Appendix at 9-11) the Mexican pedimentos presented as proof of exportation of the merchandise were "false." Customs has never presented any proof that the pedimentos were false, nor explained the basis for its claim.[1]

C.H. Robinson petitioned Customs for relief from the liquidated damages claims, providing proof of exportation. On September 4, 2002, Customs officials at Laredo issued a determination, finding, without explanation, that "violations did occur," and demanded mitigated liquidated damages in the aggregate amount of $57,212.00 within 30 days from the date of the decision. Customs noted that failure to pay the amounts demanded within 30 days would "result in the appropriate action taken for collection of the full liabilities incurred." See Appendix at 26-27.

---

[1] As noted above, C.H. Robinson could not, and did not, file the pedimentos. That was done by the Mexican broker who took control of the shipments in Laredo, and who was authorized to enter the goods into Mexico.

C.H. Robinson filed a supplemental petition for relief on September 18, 2002 (Appendix at 35-36), furnishing further proof that the garments were in fact exported. This proof included copies of the T&E entries, showing "receipt stamps" from Customs in Laredo (confirming that the goods had in fact been received by the District (Port) Director of Customs in Laredo, and discharging the carrier's liability under the T&E bonds.[2] It also included a receivables ledger from the firm of Mario Pena-Gonzales showing that the bonded cargo was actually logged in. However, on November 20, 2003, Customs issued a decision denying the supplemental petition in full "since the supplemental petition did not bring new factors" [sic]. Again, Customs demanded payment of $57,212.00, stating that failure to pay would result "in the appropriate action taken for collection of the full liabilities incurred." Appendix at 43-44.

Unable to receive meaningful review of its defenses from Customs, C.H. Robinson paid the mitigated liquidated damages demanded, and brought this action under the Tucker Act, 19 U.S.C. §1491, seeking judicial review of Customs' wrongful demands for payment, and demanding a refund of the $57,212.00 paid. Defendant has moved to dismiss this action, asserting that it falls within the exclusive grant of jurisdiction of the United States Court of International Trade, see 28 U.S.C. §§1581-1583.

---

[2] The T&E entries, by their terms, obligated the carrier to transport merchandise "consigned to the District Director of Customs at Laredo, TX (2304)", and specified the final foreign destination as "20100 Mexico Laredo".

## III. ARGUMENT

### A. The Court has Subject Matter Jurisdiction Over Plaintiff's Claim

This Court has jurisdiction over plaintiff's claim, pursuant to 28 U.S.C. § 1491,[3] because it is a claim against the United States for a refund of monies paid to Customs in mitigation of a claim for liquidated damages. C.H. Robinson asserts that there was no misdelivery of the goods, and that Customs' demand was unlawful.

It is clear that defendant is the United States and defendant has admitted that this action concerns the refund United States' demand on plaintiff for liquidated damages. Def's Mot. at 4. Defendant, however, claims that this action is within the exclusive jurisdiction of the U.S. Court of International Trade ("CIT") and, therefore, not properly before this Court.

Defendant's argument that the CIT has exclusive jurisdiction over this action lacks merit. Plaintiff agrees that this Court would lack jurisdiction if its claim was within the exclusive jurisdiction of the CIT but that is not the case here. Defendant has contended that the CIT has jurisdiction under 28 U.S.C. § 1581(I), the residual jurisdiction of that court. However, Section 1581(I) does not provide jurisdiction for any and all claims against Customs, as defendant has

[3] 28 U.S.C. §1491(a)(1) provides that;

> The United States Court of Federal Claims shall have jurisdiction to render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort. For the purpose of this paragraph, an express or implied contract with the Army and Air Force Exchange Service, Navy Exchanges, Marine Corps Exchanges, Coast Guard Exchanges, or Exchange Councils of the National Aeronautics and Space Administration shall be considered an express or implied contract with the United States.

contended. Indeed, it only provides the CIT with jurisdiction to hear cases relating to the "enforcement and administration" of matters specified in 28 U.S.C. §1581(a) through (h) and (I) through (I)(3)[4]. The Court of International Trade has ruled that it lacks jurisdiction to entertain

---

[4] The CIT's jurisdiction over actions commenced by private parties appears in 28 U.S.C. §1581, which provides in pertinent part:

> § 1581. Civil actions against the United States and agencies and officers thereof
>
> (a) The Court of International Trade shall have exclusive jurisdiction of any civil action commenced to contest the denial of a protest, in whole or in part, under section 515 of the Tariff Act of 1930 (19 U.S.C. § 1515).
>
> (b) The Court of International Trade shall have exclusive jurisdiction of any civil action commenced under section 516 of the Tariff Act of 1930 (19 U.S.C. § 1516).
>
> (c) The Court of International Trade shall have exclusive jurisdiction of any civil action commenced under section 516A of the Tariff Act of 1930 (19 U.S.C. § 1516a).
>
> (d) The Court of International Trade shall have exclusive jurisdiction of any civil action commenced to review–
>
>> (1) any final determination of the Secretary of Labor under section 223 of the Trade Act of 1974 (19 U.S.C. § 2273) with respect to the eligibility of workers for adjustment assistance under such Act;
>>
>> (2) any final determination of the Secretary of Commerce under section 251 of the Trade Act of 1974 (19 U.S.C. § 2341) with respect to the eligibility of a firm for adjustment assistance under such Act; and
>>
>> (3) any final determination of the Secretary of Commerce under section 271 of the Trade Act of 1974 with respect to the eligibility of a community for adjustment assistance under such Act.
>
> (e) The Court of International Trade shall have exclusive jurisdiction of any civil action commenced to review any final determination of the Secretary of the Treasury under section 305(b)(1) of the Trade Agreements Act of 1979 (19 U.S.C. § 2515(b)(1)).
>
> (f) The Court of International Trade shall have exclusive jurisdiction of any civil

action involving an application for an order directing the administering authority or the International Trade Commission to make confidential information available under section 777(c)(2) of the Tariff Act of 1930 (19 U.S.C. § 1677f(c)(2)).

(g) The Court of International Trade shall have exclusive jurisdiction of any civil action commenced to review–

(1) any decision of the Secretary of the Treasury to deny a customs broker's license under section 641(b)(2) or (3) of the Tariff Act of 1930 (19 U.S.C. § 1641(b)(2) or (3)), or to deny a customs broker's permit under section 641(c)(1) of such Act (19 U.S.C. § 1641(c)(1)), or to revoke a license or permit under section 641(b)(5) or (c)(2) of such Act (19 U.S.C. § 1641(b)(5) or (c)(2));

(2) any decision of the Secretary of the Treasury to revoke or suspend a customs broker's license or permit, or impose a monetary penalty in lieu thereof, under section 641(d)(2)(B) of the Tariff Act of 1930 (19 U.S.C. § 1641(d)(2)(B)); and

(3) any decision or order of the Customs Service to deny, suspend, or revoke accreditation of a private laboratory under section 499(b) of the Tariff Act of 1930 (19 U.S.C. § 1499(b)).

(h) The Court of International Trade shall have exclusive jurisdiction of any civil action commenced to review, prior to the importation of the goods involved, a ruling issued by the Secretary of the Treasury, or a refusal to issue or change such a ruling, relating to classification, valuation, rate of duty, marking, restricted merchandise, entry requirements, drawbacks, vessel repairs, or similar matters, but only if the party commencing the civil action demonstrates to the court that he would be irreparably harmed unless given an opportunity to obtain judicial review prior to such importation.

(I) In addition to the jurisdiction conferred upon the Court of International Trade by subsections (a)-(h) of this section and subject to the exception set forth in subsection (j) of this section, the Court of International Trade shall have exclusive jurisdiction of any civil action commenced against the United States, its agencies, or its officers, that arises out of any law of the United States providing for–

(1) revenue from imports or tonnage;

(2) tariffs, duties, fees, or other taxes on the importation of merchandise for reasons other than the raising of revenue;

actions arising out of protests against Customs' assessment of a claim for liquidated damages under a bond. See e.g., *Miami Free Zone Corp. v. United States*, 17 Ct. Int'l Trade 687 , 826 F.Supp. 526 (1993)(assessment of liquidated damages against FTZ operator's bond not protestable). The Court of International Trade has noted that its jurisdiction over matters pertaining to penalties and liquidated damages is limited to actions *commenced by the United States* to recover such amounts pursuant to 28 U.S.C. §1582. See, e.g., *Shiepe v. United States*, 866 F. Supp. 1430 (Ct. Int'l Tr. 1994)[5].

As determined in *Trayco, Inc. v. United States*, 994 F.2d 832 (Fed. Cir. 1993)("*Trayco*"),[6] there is a gap in the jurisdiction of the CIT that is filled by this Court. *Trayco* establishes that jurisdiction in this Court is proper where a plaintiff initiates a suit to recover certain payments made to Customs; the same facts presented in the instant case. In *Trayco*, plaintiff

---

> (3) embargoes or other quantitative restrictions on the importation of merchandise for reasons other than the protection of the public health or safety; or

(4) administration and enforcement with respect to the matters referred to in paragraphs (1)-(3) of this subsection and subsections (a)-(h) of this section.

* * *

[5] The government has in fact asserted this position before the CIT on numerous occasions. See *Shiepe, supra*; see also *Bridalane Fashions Inc. v. United States*, 32 F. Supp. 2d 466 (Ct. Int'l Tr. 1998).

[6] In *Trayco*, the government initially filed its appeal of the District Court's decision in the United States Court of Appeals for the Fourth Circuit. The Fourth Circuit affirmed the district court, dismissing both of the government's arguments. The government challenged the Fourth Circuit's appellate jurisdiction for the first time in a petition for rehearing. The Fourth Circuit vacated its opinion and transferred the case to the United States Court of Appeals for the Federal Circuit. *Trayco, Inc. v. United States*, 967 F.2d 97 (4th Cir. 1992). The Federal Circuit has exclusive appellate jurisdiction over appeals where the district court jurisdiction is based in whole or part on the Little Tucker Act, 28 U.S.C. § 1346(a)(2) (1988). 28 U.S.C. § 1295(a)(2) (1988). *Trayco*, Footnote 7.

attempted to import certain shower heads through the Port of Charleston, South Carolina. Customs seized the shower heads because the packaging was not properly marked with the country of origin. However, Customs released the shower heads to the importer for supplemental marking. Customs reinspected the packaging and determined that they still were not properly marked with the country of origin and seized the shipment. The goods were again released by Customs after the importer posted a "security deposit" and executed a form waiving judicial claims relating to the shower heads.

Customs assessed a penalty against the importer in the amount of $12,030.40 and the importer petitioned for relief of the penalty which Customs denied. The importer submitted a supplemental petition and Customs mitigated the penalty amount to $7,519.00. The importer sought to submit a second supplemental petition but had to pay the mitigated penalty before that second supplemental petition was considered. Customs denied the importer's second supplemental petition and the importer filed suit in district court in South Carolina contending that Customs' penalty was based on an erroneous finding of fact.

The district court found that it had subject matter jurisdiction under 28 U.S.C. §§ 1346(a)(2) and 1355. The court then determined that Customs had committed a factual error when it concluded that the goods were improperly marked and held that the importer was entitled to recover the penalty it had paid with interest. The CAFC affirmed the District Court's decision stating

> A gap exists in the Court of International Trade's exclusive jurisdiction for an action brought by an importer against the United States for refund of a penalty improperly assessed and exacted under 19 U.S.C. § 1592(a), (c) (1988). The district court properly exercised jurisdiction under the Little Tucker Act, 28 U.S.C. § 1346(a)(2).

*Trayco* at 839. The instant case stands on similar procedural footing and *Trayco* provides support for plaintiff's contention that there is a gap in the CIT jurisdiction that provides this Court with

subject matter jurisdiction.

The CIT lacks jurisdiction over the refund of payments made pursuant to a liquidated damages claim against a carrier on a transportation and exportation ("T & E") bond. The court in *Trayco* made the point that Section 1581 of Title 28 of the United States Code grants exclusive jurisdiction to the CIT only over actions addressed by a specific jurisdictional grant. *Trayco* at 836. As was the case in *Trayco*, there is no specific jurisdictional grant for actions based on the refund of payments made on Customs' claim for liquidated damages on a carrier with a T & E bond. The *Trayco* court determined that the CIT did not have exclusive jurisdiction even under the residual provision of Section 1581(I). *Id*. The court concluded that "if Congress had intended all import-related matters to come within the exclusive jurisdiction of the Court of International Trade it would have specifically said so." *Id*.

The United States Supreme Court has also concluded that the CIT's grant of jurisdiction does not include every action that arises from an import transaction. In *K-Mart Corp. v. Cartier, Inc.*, 485 U.S. 176 (1988)("*K-Mart*"), the U.S. Supreme Court held that

> Congress did not commit to the Court of International Trade's exclusive jurisdiction every suit challenging customs-related laws and regulations. Had Congress wished to do so it could have expressed such intent much more clearly and simply by, for example, conveying to the specialized court exclusive jurisdiction over all civil actions against the Government directly [**7] affecting imports, or over all civil actions against the Government which arise directly from import transactions and which arise under the Tariff Act of 1930 . . . .

*K-mart* at 187. The CIT's exclusive jurisdiction does not specifically cover the instant case and, therefore, jurisdiction is proper before this Court.

That the jurisdiction "gap" noted in *Trayco* remains in place was confirmed by the

recent Court of Federal Claims decision in *Forest Products Northwest Inc. v. United States*, 62 Fed. Cl. 109 (September 17, 2004), where an importer of softwood lumber products brought an action in this Court seeking to challenge an unliquidated Customs assessment of antidumping and countervailing duties imposed on certain imported goods. Although the Court rejected the attempt to characterize the duties which were at issue in that case as "penalties," it noted:

> The problem that arises [is] that although 28 U.S.C. §1581 provides the CIT's jurisdiction for actions brought against the government, it is silent as to situations in which an importer, for example, challenges a §1592 penalty under protest. A jurisdictional "gap," so to speak, exists for parties seeking judicial review of §1592 penalties paid under protest.

This is the situation the Federal Circuit faced in *Trayco Inc. v. United States*.

The *Customs Courts Act of 1980*, which established the Court of International Trade and set out its grant of jurisdiction, has not been amended since *Trayco* was decided. The jurisdictional "gap" which the Federal Circuit noted in that case remains. While the CIT has exclusive jurisdiction over a limited set of challenges commenced by importers, it does not have jurisdiction over an action commenced by an importer to seek recovery of penalties or liquidated damages demanded by Customs and paid.

The courts have consistently refused to extend the CIT's jurisdiction to cover claims by private parties for the recovery of penalties or liquidated damages paid. See, e.g., *Byung Wu Lee v. United States*, 329 F.2d 817 (Fed. Cir. 1993)(CIT lacked jurisdiction to entertain claim of Customs broker who had failed to pay administrative penalties and sought to challenge them in defense of broker license revocation proceeding).[7] Other courts have also acknowledged the continuing vitality

---

[7] In *Byung Wu Lee*, the Federal Circuit noted that:

of *Trayco*. In *United States v. Universal Fruits and Vegetables Corp.*, 362 F.3d 551 (9th Cir. 2004), the Ninth Circuit dismissed an attempt by the United States to recover antidumping duties from an importer by bringing a "reverse false claims act" case in Federal District Court. The Circuit Court noted the CIT's exclusive jurisdiction under 28 U.S.C. §1582 to entertain government actions to recover duties from an importer, and also noted the limits of the CIT's jurisdiction:

> . . . "despite the fact that the Customs Courts Act of 1980 broadened the exclusive jurisdiction of the United States Court of International Trade, it cannot exercise jurisdiction over actions not addressed by a specific jurisdictional grant." *Trayco, Inc. v. United States*, 994 F.2d 832, 836 (Fed. Cir. 1994).

362 F.3d at 555. While the CIT has indicated that an importer's claim for recovery of withheld duties involuntarily paid may be the subject of a protest, and hence, a lawsuit commenced in that court pursuant to 28 U.S.C. §1581(a),[8] that Court has never entertained a private party's action seeking recovery of amounts paid to Customs following a demand for payment of penalties or liquidated damages. Since such claims have never been held to fall within 28 U.S.C. §1581, they cannot be entertained pursuant to that Court's 28 U.S.C. §1581(I) "residual" grant of jurisdiction,

---

> A broker does have the right to judicial review of penalty determinations. See 19 U.S.C. 1641(e) (1994); *United States v. Ricci*, 985 F. Supp. 125, 126-27 (Ct. Int'l Trade 1997). But the system set out in the regulations and Customs' policies give the broker options that do not require him to subject himself to revocation proceedings to preserve his right to appeal the penalty determination. **For example, Mr. Lee could have chosen to pay the penalty under protest to preserve his right to appeal to the courts. See *Trayco, Inc. v. United States*, 994 F.2d 832, 835 (Fed. Cir. 1993).**

(Emphasis added). Thus, as recently as last year, the Federal Circuit recognized the continuing vitality of its *Trayco* decision.

[8] See *Brother International Inc. v. United States*, 246 F. Supp. 2d 1318 (2003).

contrary to the government's assertion here.

### B. Plaintiff Did Not Waive its Right to Judicial Review

Plaintiff has a justiciable claim before the Court based on the regulations and court precedent. Defendant's recitation of 19 C.F.R. § 172.22(b) is misleading because it does not place the language in the context of that regulation. Section 172.22 is the second section in Subpart C - Disposition of Petitions and is titled "Decisions not protestable." There is absolutely no mention nor any tie to judicial review in Section 172.22. Defendant also omitted key language in its initial recitation of the body of the regulation - the text in bold completes the full text of the regulation:

> **§ 172.22 Decisions not protestable.**
>
> (a) Mitigation decision not subject to protest. Any decision to remit or mitigate a penalty or cancel a claim for liquidated damages upon payment of a lesser amount is not a protestable decision as defined under the provisions of 19 U.S.C. 1514. Any payment made in compliance with any decision to remit or mitigate a penalty or cancel a claim for liquidated damages upon payment of a lesser amount is not a charge or exaction and therefore is not a protestable action as defined under the provisions of 19 U.S.C. 1514.
>
> (b) Payment of mitigated or cancellation amount as accord and satisfaction. Payment of a mitigated or cancellation amount in compliance with an administrative decision on a petition or supplemental petition for relief will be considered an election of administrative proceedings and full disposition of the case. **Payment of a mitigated or cancellation amount will** act as an accord and satisfaction of the Government claim. **Payment of a mitigated or cancellation amount will never serve as a bar to filing a supplemental petition for relief.**

The regulation speaks only to Customs' administrative process and certainly cannot be construed to affect a party's right to judicial review. In fact, the text omitted by defendant does not even

exhaust or waive a party's right to further *administrative* review, let alone judicial review, as it clearly allows an importer to file a supplemental petition after the payment of mitigated claims. Furthermore, the "accord and satisfaction" language in Section 172.22(b) speaks only to the resolution of the administrative petition process and it does not preclude further administrative review nor judicial review by the clear language of regulation.

The change in the Customs Regulations was enacted to recognize that importers who have been assessed liquidated damage claims may not challenge such claims by filing an administrative protest pursuant to 19 U.S.C. § 1514. Defendant's argument that the amended Section 172.22 somehow limited the jurisdiction of the courts, or precluded judicial review in cases where an importer pays liquidated damages, does not comport with the language of the regulation. A full reading of the history of the change to Section 172.22 shows that Customs' intent was to preclude an importer from filing a protest once a liquidated damage claim had been paid. The text of the final rule states,

> In light of these [court] decisions, it was proposed to amend the regulations to indicate that claims for liquidated damages and decisions on petitions are not properly the subject of a protest filed pursuant to 19 U.S.C. 1514.
>
> * * *
>
> Customs proposed to amend the regulations to eliminate this regulatory gap an provide that any payment made in compliance with a mitigation decision will act as an accord and satisfaction where the paying party has elected to resolve the case through the administrative process and has waived the right to sue for a refund. It was proposed that this express statement be included in all mitigation decisions offered to petitioners in order to provide full disclosure as to their administrative or judicial rights.

65 Fed. Reg. 53565 at 53567 (2000). Plaintiff never waived its right to sue for a refund on the

payments made on the liquidated damages claim and there was no language in any of the mitigated decisions or denials of plaintiff's petitions, as defendant's appendix evidence, that by paying the mitigated amount, plaintiff would be precluded from obtaining judicial review.[9]

The language of Section 172.22 is also silent on preclusion of judicial review. Defendant's reading of Section 172.22 would effectively prevent plaintiff from ever obtaining judicial review. Section 172.22 provides a means by which an importer can exhaust its administrative remedies and prohibits the subsequent filing of a protest. Plaintiff had two choices when it received Customs' claim for liquidated damages: 1) file a petition and exhaust its administrative remedies; or 2) do nothing and Customs would pursue the claim with plaintiff's surety. Plaintiff had no valid claim before this Court or any other court until it had exhausted its administrative remedies. See *Dudley v. United States*, 61 Fed. Cl. 685 (2004), *Demarco Durzo Dev. Co. v. United States*, 60 Fed. Cl. 632 (2004), *Okerlund v. United States*, 53 Fed. Cl. 341(2002). If plaintiff had opted to do nothing and have Customs pursue the claim against plaintiff's surety, plaintiff would lose its standing to bring suit. Therefore, the only path to judicial review for plaintiff was to file a petition and once denied, bring suit before this Court.

Court precedent also supports the fact that plaintiff has a justiciable claim before this Court. Although defendant cites to *Trayco* as providing support for its argument, defendant fails to apply the court's holding to the instant case. The *Trayco* court held that,

---

[9] It is also unclear how an administrative agency can, by regulation, limit or change the jurisdiction of a Federal court, and defendant provides no explanation. Moreover, an "accord and satisfaction" requires a true meeting of the minds, and cannot be imposed by fiat or by the contention of a single party. It is well settled that an "accord and satisfaction" cannot be based on the unilateral action of one party. See *Pueblo Bank & Trust Co. v. Steele,* 110 F.3d 74 (10th Cir. 1997). Rather, "it must be consummated by a meeting of the minds and accompanied by sufficient consideration", *id.*, *citing E.F. Hutton Co. v. Helm*, 263 Kan. 603, 694 P.2d 445, 451 (Kan . 1985).

> the statute and regulations are silent regarding the availability of (or preclusion of) judicial review after administrative remedies are exhausted. 19 U.S.C. § 1618; 19 C.F.R. § 171.33. In light of the fact that nothing in the statute or regulations gives notice that a party may relinquish its rights to judicial review by paying a mitigated penalty and filing a second supplemental petition, we decline to hold that Trayco is estopped where it accompanied its payment with a statement expressly reserving its rights to judicial review.

*Trayco* at 839. There is still no language in the applicable statute or regulations that gives notice to party that paying mitigated penalty amounts precludes them from seeking judicial review. Defendant's argument that Section 172.22's accord and satisfaction language provides that notice does not square with a plain reading of the regulation in its context. Payment of mitigated penalties under Section 172.22 may preclude that party from filing of a protest, as the heading clearly states, but it does not even preclude the filing of a supplemental administrative petition, much less judicial review.

## IV. CONCLUSION

This Court has subject matter jurisdiction over this action and plaintiff has brought forth a justiciable issue. There is a recognized gap in the CIT's exclusive jurisdiction that applies to the facts of the instant case. There is no provision for the instant case in the CIT's grant of exclusive jurisdiction, even under the residual jurisdiction 28 U.S.C. 1581(I). Because there is no specific jurisdictional grant before the CIT for the instant case, plaintiff's case is properly before this Court. Plaintiff never waived its right to judicial review of its refund claim. Section 172.22 pertains only to decisions that are not protestable and does not reach the question of judicial review so plaintiff cannot be said to be on notice. Finally, there was no language in any of the petition or mitigation decisions that could be said to waive plaintiff's rights to judicial review. Plaintiff's case is properly before this Court and provides a justiciable issue and defendant's motion should be denied.

Respectfully submitted,

s/ Curtis W. Knauss

Curtis W. Knauss
John M. Peterson
Neville Peterson LLP
Counsel for Plaintiff C.H. Robinson International
17 State Street, Suite 1900
New York, NY 10004
212-635-2730

Dated: November 16, 2004