IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| C.H. ROBINSON INTERNATIONAL, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 04-1021C |
| | ) | (Chief Judge Damich) |
| THE UNITED STATES, | ) | |
| | ) | |
| Defendant. | ) | |

**DEFENDANT'S REPLY TO PLAINTIFF'S**
**RESPONSE TO DEFENDANT'S MOTION TO DISMISS**

In our motion to dismiss, we demonstrated that the Court does not possess jurisdiction to adjudicate plaintiff's claim for refund of liquidated damages that were assessed to ensure that the bonded carrier exported the merchandise and did not otherwise avoid the payment of duties that should have been assessed on the merchandise, because the Court of International Trade possesses exclusive jurisdiction to entertain claims against the United States arising from the administration and enforcement of laws providing for duties. Def. Mot. at 7-9. Plaintiff's claim arises from the administration and enforcement of laws providing for duties because part of the liquidated damages assessed represented the value of duties that plaintiff would have owed on the bonded merchandise and Customs has a potential counterclaim for duties owed on the same entries at issue. Def. Mot. at 8-10. We further demonstrated that C.H. Robinson may not avoid the exclusive jurisdiction of the Court of International Trade by styling its claim as one for breach of contract. Def. Mot at 10-11. We also demonstrated that, in the alternative, the Court should dismiss plaintiff's complaint for failure to state a claim upon which relief can be granted, because C.H. Robinson paid a mitigated amount of the liquidated damages assessed in accord and satisfaction of its claim pursuant to 19 C.F.R. § 172.22. Def. Mot. at 12-14.

In response, C.H. Robinson claims that the Government has misapprehended the pertinent regulations and precedent. Pl. Resp. at 1. C.H. Robinson primarily relies upon Trayco, Inc. v. United States, 994 F.2d 832 (Fed. Cir. 1993), to contend that this Court possesses jurisdiction to entertain a private party's claim for refund of penalties or liquidated damages. Pl. Resp. at 7-9. As demonstrated below, C.H. Robinson's argument is erroneous because it misinterprets the holding in Trayco, ignores the Court of International Trade's residual grant of jurisdiction to entertain claims arising out of the administration and enforcement of laws providing for duties pursuant to 28 U.S.C. § 1581(i), overlooks the fact that liquidated damages in this case partially represented the amount of duties owed on the merchandise, and fails to address the potential counterclaim that Customs has against C.H. Robinson for the remaining amount of duties owed.

C.H. Robinson also contends that its payment in full of the mitigated amount did not constitute accord and satisfaction. Pl. Resp. at 12-15. According to C.H. Robinson, 19 C.F.R. §172.22 refers to accord and satisfaction only in the administrative context and does not apply to actions in Federal court. C.H. Robinson cites no support for this novel proposition; it attempts to make a distinction that the doctrine of accord and satisfaction simply does not recognize. C.H. Robinson further asserts that payment of the mitigated amount cannot constitute accord and satisfaction because without paying the full mitigated amount, it could not have sought meaningful review of its defenses. Pl. Resp. at 3, 11. Again, C.H. Robinson provides no support for this contention. To the contrary, we demonstrate that even without paying the mitigated amount, C.H. Robinson would not have lost its right to defend its claim on the merits. Finally, C.H. Robinson attempts to analogize this case to Trayco, Pl. Resp. at 14-15; however, as we demonstrated in our motion, Def. Mot. at 13-14, the regulations were amended by Customs in

part to specifically correct the problem addressed by Trayco, i.e. that the previous regulation failed to provide notice that payment of the mitigated amount would constitute accord and satisfaction.

## ARGUMENT

### I. This Court Does Not Possess Subject Matter Jurisdiction To Entertain C.H. Robinson's Complaint

C.H. Robinson contends that Trayco holds that this Court possesses jurisdiction whenever "a plaintiff initiates a suit to recover certain payments made to Customs." Pl. Resp. at 7. C.H. Robinson misreads the holding of Trayco. In Trayco, the United States Court of Appeals for the Federal Circuit held that "a gap exists in the Court of International Trade's exclusive jurisdiction for an action brought by an importer against the United States for refund of a penalty improperly assessed and exacted under 19 U.S.C. § 1592(a), (c)." 994 F.2d at 836. That holding is inapposite here. The Federal Circuit never held that a claim for liquidated damages may not arise under the residual grant of jurisdiction to the Court of International Trade enumerated in section 1581(i) regarding all claims arising from the administration and enforcement of laws providing for duties.

Trayco is distinguishable because C.H. Robinson is not seeking a refund of a penalty assessed under 19 U.S.C. § 1592. Instead, it is seeking a refund of liquidated damages, of which a portion represents duties owed on the merchandise. In contrast, the penalty assessed in Trayco did not include a portion owed for duties. This distinction is critical. Here, there is no jurisdictional gap as there was in Trayco. It is clear that when an importer is seeking a refund of duties, the Court of International Trade possesses exclusive jurisdiction to entertain the

importer's claim pursuant to the court's residual jurisdiction in section 1581(i). See Orleans, Int'l Inc. v. United States, 334 F.3d 1375, 1378 (Fed. Cir. 2003); United States v. United States Shoe Corp., 523 U.S. 360, 365-66 (1998); St. Paul Fire & Marine Insurance Co. v. United States, 959 F.2d 960 (Fed. Cir. 1992). Here, C.H. Robinson's claims fall squarely within the exclusive jurisdiction of the Court of International Trade.

Because a large part of the mitigated amount that C.H. Robinson paid represents a portion of the duties owed on the merchandise, the Court of International Trade possesses jurisdiction to entertain C.H. Robinson's claim pursuant to section1581(i). See Bridalane Fashions, Inc. v. United States, 22 C.I.T. 1064, 32 F.Supp.2d 466 (1998); see also Conoco, Inc. v. United States, 18 F.3d 1581, 1589 (Fed. Cir. 1994) (finding section 1581(i) jurisdiction because underlying revenue claim fell within "issues of governmental law and policy regarding customs and tariffs, the type of issues with which the Court of International Trade is acknowledged to have expertise."); Forest Prods. N.W., Inc. v. United States, 62 Fed. Cl. 109 (2004) (dismissing claim for refund of duties because subject matter fell within exclusive jurisdiction of Court of International Trade); United States v. Universal Fruits & Vegetables Corp., 362 F.3d 551 (9th Cir. 2004) (determining that Court of International Trade had exclusive jurisdiction over government's claim, which included a portion for duties); Pope Products v. United States, 15 C.I.T. 484, 485-86 (1991) (refund of liquidated damages case dismissed based upon statute of limitations after the Court of International Trade assumed it possessed jurisdiction pursuant to §1581(i)).

In Bridalane, a company imported wedding gowns into the United States and erroneously claimed that they were manufactured in Canada. 32 F. Supp. 2d at 466. As a result, the importer paid reduced duties on the gowns under the North American Free Trade Agreement ("NAFTA"). Id. at 467. The importer disclosed the mistake to Customs, and Customs thereafter assessed a section 1592 penalty and marking duties pursuant to 19 U.S.C. § 1304(h). Id. at 468. Refusing to pay the marking duties, the importer brought an action in the Court of International Trade to determine whether it owed Customs marking duties and whether it was entitled to have the section 1592 penalty reduced. Id. at 468-69.

The importer asserted that the Court of International Trade possessed jurisdiction to entertain the claim pursuant to either 28 U.S.C. § 1581(a) or 28 U.S.C. § 1581(i). Id. at 469-70. The Government countered that the Court lacked jurisdiction under either of those provisions and filed a motion to dismiss. Id. The Court held that it possessed jurisdiction to entertain this claim under both section 1581(a) and section 1581(i). Id. The court stated:

> If this matter [only] concerned extracted penalties, the court could say to plaintiffs, 'Pay the penalties and seek recovery in district court pursuant to Trayco, or do not pay them and let the Government sue you.' But the issue here is prior disclosure treatment and the recovery of duties, the essence of this court's jurisdiction. The issue of jurisdiction over cases such as the one at hand and other types of 19 U.S.C. § 1592 penalty and duty recovery cases is in considerable turmoil.

Id. at 470 (emphasis added). The Court reasoned that "[s]ection 1581(i) . . . seems broad enough to provide jurisdiction over the substantive right because penalty recovery actions relate to the enforcement and collection of customs duties." Id. at n.2. The Court of International Trade, therefore, determined that it possessed jurisdiction to entertain cases that involve both the assessment of a penalty and the collection of duties.

Trayco is further distinguishable because, as we demonstrated in our motion, Customs has determined that the amount representing duties already collected from C.H. Robinson was insufficient. Def. Mot. at 10. The total amount of duties that should have been assessed on the merchandise at issue is $106,407.86. Def. Mot. at 4, n.1. As a result, if this case is not dismissed and the accord and satisfaction reached between the parties is not enforced, Customs will be seeking payment of these duties in the form of a counterclaim. Yet, because such a counterclaim would fall under the exclusive jurisdiction of the Court of International Trade, see 28 U.S.C. § 1583,[1] this Court would be deprived of jurisdiction to entertain Customs' counterclaim to C.H. Robinson's complaint. Plainly, C.H. Robinson's claim necessarily arises from the administration and enforcement of laws providing for duties because Customs has a potential counterclaim for duties owed on the same entries at issue. It would be prudent, moreover, for this Court to defer to the Court of International Trade to exercise jurisdiction in this matter to avoid any possibility of inconsistent resolutions and to defer to the expertise of the Court of International Trade in resolving cases regarding duties. Accordingly, this Court should dismiss C.H. Robinson's claim for lack of jurisdiction.

[1] 28 U.S.C. § 1583 reads, "In any civil action in the Court of International Trade, the court shall have exclusive jurisdiction to render judgment upon any counterclaim . . . if (1) such claim or action involves the imported merchandise that is the subject matter of such civil action, or (2) such claim or action is to recover upon a bond or customs duties relating to such merchandise."

II. In The Alternative, The Court Should Dismiss The Complaint Because C.H. Robinson Paid In Full The Mitigated Amount In Accord And Satisfaction Of Its Claim

C.H. Robinson contends that 19 C.F.R. § 172.22 prevents an importer who paid a mitigated amount of liquidated damages from filing an administrative protest pursuant to 19 U.S.C. § 1514. Pl. Resp. at 12-13. It denies that 19 C.F.R. § 172.22 prevents it from filing a civil action after having paid a mitigated amount of the liquidated damages assessed. Id. This argument is erroneous because it focuses solely upon paragraph (a) of section 172.22 and ignores paragraph (b).

Section 172.22 states in full:

> § 172.22 Decisions not protestable
>
> (a) Mitigation decisions not subject to protest. Any decision to remit or mitigate a penalty or cancel a claim for liquidated damages upon payment of a lesser amount is not a protestable decision as defined under the provisions of 19 U.S.C. 1514. Any payment made in compliance with any decision to remit or mitigate a penalty or cancel a claim for liquidated damages upon payment of a lesser amount is not a charge or exaction and therefore is not a protestable action as defined under the provisions of 19 U.S.C. 1514.
>
> (b) Payment of a mitigated or cancellation amount as accord and satisfaction. Payment of a mitigated or cancellation amount in compliance with an administrative decision on a petition or supplemental petition for relief will be considered an election of administrative proceedings and full disposition of the case. Payment of a mitigated or cancellation amount will act as an accord and satisfaction of the Government claim. Payment of a mitigated or cancellation amount will never serve as a bar to filing a supplemental petition for relief.

Read as a whole, paragraph (a) of section 172.22 refers to the effect of payment of a mitigated amount upon the importer's ability to file an administrative protest pursuant to 19 U.S.C. §1514.

Paragraph (b), in contrast, refers to the effect of a payment of a mitigated amount upon the "full disposition of the case" in the form of an accord and satisfaction. As such, further judicial review of the merits is barred. See 65 Fed. Reg. 53565, at 53567 ("Customs proposed to amend the regulations to . . . provide that any payment made in compliance with a mitigation decision will act as an accord and satisfaction where the paying party has elected to resolve the case through the administrative process and has waived the right to sue for a refund.").

C.H. Robinson's contention that section 172.22(b) does not operate to waive judicial review is based upon a misunderstanding of the common law doctrine of accord and satisfaction. Accord and satisfaction is "'one of the recognized methods of discharging and terminating an existing right' and constitutes 'a perfect defense in an [civil] action for the enforcement of a previous claim, whether that claim was well founded or not." Chesapeake & Potomac Tel. Co. v. United States, 228 Ct. Cl. 101, 108, 654 F.2d 711, 716 (1981) (quoting 6 Corbin on Contracts § 1276 (1962)). "A claim is discharged by the doctrine of accord and satisfaction when 'some performance different from that which was claimed as due is rendered and such substituted performance is accepted by the claimant as full satisfaction of his claim.'" O'Connor, et. al, v. United States, 308 F.3d 1323, 1240 (Fed. Cir. 2002) (quoting Case, Inc. v. United States, 88 F.3d 1004, 1011 n. 7 (Fed. Cir. 1996)). Accordingly, this Court has recognized that a valid accord and satisfaction bars plaintiffs from bringing their claim before this Court. See, e.g., Valcon II, Inc. v. United States, 26 Cl. Ct. 393, 396-97 (1992).[2]

---

[2] On footnote 9 of its response, C.H. Robinson confuses the doctrine of accord and satisfaction with the jurisdiction of this Court. The doctrine of accord and satisfaction does not alter this Court's jurisdiction, which is statutorily defined by Congress.

Here, there was a meeting of the minds that payment of the mitigated amount would constitute discharge of the claim pursuant to the doctrine of accord and satisfaction. On September 4, 2002, Customs sent a letter to C.H. Robinson stating that Customs found that C.H. Robinson had committed the violations at issue, but that under the circumstances, Customs would mitigate the penalties pursuant to its authority conferred in 19 C.F.R. § 172.11.[3] App. at 26. Customs regulation further provided that "[p]ayment of a mitigated or cancellation amount will act as an accord and satisfaction." App. at 26. C.H. Robinson is presumed to know the law, both the applicable regulations and the common law doctrine of accord and satisfaction. See Hermes Consolidated, Inc. v. United States, 58 Fed. Cl. 409, 416 (2003) ("A fundamental premise of our legal system is that parties are presumed to know the law, and ignorance of the law is no excuse."); SCM Corp. v. United States, 219 Ct. Cl. 459, 463, 595 F.2d 595, 598 (1979) ("[p]arties are presumed to know and required to be cognizant of the governing regulations."). Accordingly, when C.H. Robinson paid in full the mitigated amount of the liquidated damages without any reservations whatsoever, C.H. Robinson intended that payment would discharge its claim. See Chesapeake & Potomac Tel. Co., 654 F.2d at 716.

Nonetheless, C.H. Robinson contends that paragraph (b) of 19 C.F.R. § 172.22 cannot be construed to affect its right to judicial review because the last sentence of section 172.22(b) states that "[p]ayment of a mitigated or cancellation amount will never serve as a bar to filing a supplemental petition for relief." Pl. Resp. at 12. C.H. Robinson's argument is erroneous

[3] 19 C.F.R. § 172.11 states in relevant part: "the Fines, Penalties, and Forefeitures Officer, notwithstanding any other law or regulation, is empowered to mitigate any penalty or cancel any claim for liquidated damages on such terms and conditions as, under law and in view of the circumstances, he or she shall deem appropriate in accordance with appropriate delegations of authority."

because the mere fact that Customs has the ability to unilaterally grant additional administrative relief for the benefit of the other party does not mean that accord and satisfaction previously reached is not otherwise final. The last sentence of section 172.22(b) provides Customs officials with regulatory authority to exercise discretion and grant appropriate relief despite the legal occurrence of the accord and satisfaction where a party presents a supplemental petition with new information that, if known earlier, would have resulted in substantial or complete relief. 19 C.F.R. § 172.11.

C.H. Robinson further contends, incorrectly, that payment of the mitigated amount could not have constituted accord and satisfaction because it was required to pay in full the mitigated amount and thereafter seek a refund in order to obtain meaningful review of its defenses. Pl. Resp. 3; 14. In fact, if C.H. Robinson was dissatisfied with the administrative determination, it could have refused to make payment and waited for Customs to initiate judicial action against it or its surety[4] pursuant to 28 U.S.C. § 1582(2), (3).[5] If Customs filed an affirmative suit against C.H. Robinson or its surety seeking payment of the liquidated damages, C.H. Robinson or its surety would be able to assert its defenses at that time. See United States v. Utex International Inc., 857 F.2d 1408, 1413-14 (Fed. Cir. 1988) ("It is not characteristic of either the law of surety or the law of contracts that a defendant must routinely pay the amount demanded prior to judicial

[4] Under the terms of the custodial bond, both the importer and surety are "jointly and severally liable" to pay liquidated damages. 19 C.F.R. § 113.63(h)(1).

[5] The importer and surety, however, could not file a civil action in the Court of International Trade challenging Customs' assessment of liquidated damages because the assessment of liquidated damages is not a charge or exaction such that the importer would be able to file a protest pursuant to 19 U.S.C. § 1514. See United States v. Toshoku America, Inc., 879 F.2d 815, 818 (Fed. Cir. 1989); Halperin Shopping Co. v. United States, 14 C.I.T. 438,441-42, 742 F. Supp. 1163, 1166-67 (1990).

determination of contractual liability. Absent statutory directive or clear Congressional intent to the contrary, [the courts] do not impose it.")

Even if Customs only sued the surety and the surety decided to pay the liquidated damages, C.H. Robinson still would be able to assert its defenses in an action brought by the surety to recover upon the surety's payment of the liquidated damages. See United States v. Schmittmeyer, 325 F.2d 987, 988 (2d Cir. 1963). Under suretyship law, a principal is required only to give notice of a valid defense to the surety; if the surety pays the obligation despite the existence of a valid defense, then the principal would have a defense to a claim for reimbursement by the surety. Restatement (First) of Security, § 108(5) (1941); Restatement (Third) of Suretyship & Guaranty §24(1)(e) (1996). An exception would arise if the surety was forced to pay due to reasonable business compulsion, id., but this is not likely to occur. One basis for business compulsion would be if Customs threatened the surety with national sanction, see 19 C.F.R. § 113.38(c); however, Customs publicly has indicated that it would not seek such measures when a surety refuses to pay on an obligation because of a "justiciable issue." 65 Fed. Reg. at 53571; see also 19 C.F.R. § 113.38(c)(3) (before such a measure would be taken, Customs permits a surety to "demonstrate the existence of a significant legal issue justifying further delay in payment.").

Finally, C.H. Robinson contends that the facts in Trayco are analogous to those here and thus supports its argument that its claim was not discharged through accord and satisfaction. Pl. Resp. at 14-15. The facts in Trayco, however, are different in three key aspects. First, in Trayco, the importer accompanied its check "with a cover letter noting that the payment was being made 'under protest reserving all rights to judicial review following the exhaustion of the

administrative remedies.'" 994 F.2d at 835, 839. Here, C.H. Robinson did not make payment under protest expressly reserving its right to judicial review. Thus, it did not put Customs on notice that it reserved the right to subsequently litigate the merits.

Second, in Trayco, the importer was required to submit payment in full before Customs even would consider a supplemental petition.[6] 994 F.2d at 835 n.11, 839. Here, Customs eliminated the requirement that payment in full was required to be made before Customs would consider supplemental petitions. 65 Fed. Reg. at 53567. Thus, C.H. Robinson was not coerced into paying the mitigated amount for any other reason than to resolve its claim through accord and satisfaction.

Third, the court in Trayco found that "nothing in the statute or regulations [gave] notice that a party may relinquish its rights to judicial review by paying a mitigated penalty and filing a second supplemental petition." 994 F.2d at 839. Here, Customs amended its regulation to specifically provide notice that payment of a mitigated amount would constitute accord and satisfaction. 19 C.F.R. § 172.22; 65 Fed. Reg. at 53571 ("The proposed regulation, once adopted, will serve to give notice that the [Trayco] court stated was missing, in that payment of a penalty will act as an accord and satisfaction and bar judicial review.") C.H. Robinson, therefore, cannot claim that it was not aware that payment of the mitigated amount would constitute full disposition of its case. See Hermes Consolidated, Inc 58 Fed. Cl. at 416

---

[6] At the time Trayco was decided, the applicable regulation read: "The second supplemental petition will not be accepted unless accompanied or preceded by full payment of all penalties and withheld duties determined to be due in the decision rendered on the first supplemental petition." 19 C.F.R. § 171.33(c) (1993). Customs subsequently has eliminated second supplemental petitions entirely. See 65 Fed. Reg. at 53567.

("ignorance of the law is no excuse.").

Accordingly, Trayco is distinguishable and does not lend support to C.H. Robinson's argument that payment of the mitigated amount did not constitute accord and satisfaction. This Court, moreover, should reject C.H. Robinson's argument because it would allow importers in thousands of other cases settled by Customs to reopen and relitigate their claims.

## CONCLUSION

For these reasons, we respectfully request that the Court dismiss plaintiff's complaint for lack of subject matter jurisdiction or, in the alternative, failure to state a claim upon which relief can be granted.

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

DAVID M. COHEN
Director

s/ Patricia M. McCarthy

PATRICIA M. McCARTHY
Assistant Director

s/ Nancy M. Kim

NANCY M. KIM
Trial Attorney
Commercial Litigation Branch
Civil Division
U.S. Department of Justice
Attn: Classification Unit, 8th Floor
1100 L Street, N.W.
Washington, D.C. 20530
Tel: (202) 307-0361
Fax: (202) 514-7965

Attorneys for Defendant

OF COUNSEL:

Andrew S. Kosegi
U.S. Customs And Border Protection
Department of Homeland Security

December 23, 2004