# In the United States Court of Federal Claims

No. 04-1021 C
(Filed: March 31, 2005)

| | | |
|---|---|---|
| **C.H. ROBINSON INTERNATIONAL,** Plaintiff, v. **THE UNITED STATES,** Defendant. | | Subject matter jurisdiction; waiver; gap in jurisdiction of Court of International Trade; 19 U.S.C. 1553; penalties assessed under 19 C.F.R. 18.8; *Trayco v. United States*; mitigated liquidated damages under 19 C.F.R. 172.22 |

*Curtis W. Knauss*, New York, NY, counsel of record for the plaintiff.

*Nancy M. Kim*, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, counsel of record for the defendant, with whom were *Patricia M. McCarthy*, Assistant Director, *David M. Cohen*, Director, and *Peter D. Keisler*, Assistant Attorney General; and of counsel *Andrew S. Kosegi*, Department of Homeland Security.

## OPINION

**Damich**, Chief Judge.

This matter is before the Court on Defendant's Motion to Dismiss for lack of jurisdiction under Rule 12(b)(1) of the Rules of the Court of Federal Claims ("RCFC") and for failure to state a claim upon which relief can be granted under RCFC 12(b)(6). For the reasons discussed below, the Court DENIES the motion.

## I. Introduction

C.H. Robinson International ("C.H. Robinson" or "Plaintiff") brought this action on June 17, 2004, seeking refund of $57,212 which it paid to the government as mitigated liquidated damages for allegedly violating Customs regulation 19 C.F.R. § 18.8. The regulation generally requires that carriers of merchandise that is imported for the purpose of transport to another

destination for immediate export to another country, provide proof of proper delivery to the port of destination.

On October 4, 2004, Defendant filed the pending Motion to Dismiss ("Def.'s Mot."), asking the court to dismiss the case for lacking jurisdiction pursuant to RCFC 12(b)(1), or in the alternative, for failing to state a claim upon which relief could be granted pursuant to RCFC 12(b)(6). In the Motion, Defendant raises two issues. First, Defendant contends that because the subject matter at issue in this case falls within the exclusive residual jurisdiction of the Court of International Trade ("CIT") as defined by 19 U.S.C. § 1581(i), this Court lacks jurisdiction over the case. Second, Defendant argues that even if this Court has jurisdiction, the case must be dismissed because Plaintiff's payment of mitigated liquidated damages constitutes an accord and satisfaction which, under 19 C.F.R. § 172.22, bars it from seeking further judicial relief.

A. Factual Background

In late 2001, C.H. Robinson took custody of several thousand containers of garments in three shipments at the port of Los Angeles, CA. The three shipments were to be transported to Laredo, TX for exportation to Mexico. In order to transport these types of shipments without paying import taxes and duties, Plaintiff was required to post a custodial bond ("transportation and exportation bond" or "T&E bond") in the amount of $25,000 which would be used for the collection of liquidated damages if the shipments were not exported out of the country as promised. Plaintiff avers that it transported the goods to Laredo and delivered them to Mario Pena-Gonzalez, a Mexican Customs broker designated to receive the goods and effect their exportation to Mexico.

On April 1, 2002, Customs issued three notices of liquidated damages to C.H. Robinson, each in the full bond amount of $25,000. The notices charged C.H. Robinson with misdelivery of the merchandise in violation of 19 C.F.R. § 18.8. According to the notices, the Mexican *pedimentos*[1] presented as proof of exportation of the merchandise were "false." C.H. Robinson maintains that the government has never explained how or why the *pedimentos* were deficient, nor has it produced any proof of their deficiency. The notices stated that C.H. Robinson owed three separate payments of $25,000 totaling $75,000.

C.H. Robinson petitioned Customs for relief from the liquidated damages assessed, and provided what it purported to be proof of exportation of the merchandise. On September 4, 2002, Customs officials at Laredo issued a determination, finding that the violations alleged in the notices did indeed occur. However, the determination did not include an explanation of why C.H. Robinson's documents were insufficient. The determination further offered mitigated liquidated damages in the aggregate amount of $57,212 that could be paid within 30 days of the decision.

[1] A *pedimento* is a Mexican import/export document.

On September 18, 2002, C.H. Robinson filed a supplemental petition for relief, in which it furnished additional documents that allegedly demonstrated that the garments were in fact exported to Mexico. The documents included copies of the Transportation and Exportation ("T&E") entries showing receipt stamps from U.S. Customs in Laredo.[2] The additional documents also included a receivables ledger from the Mexican Customs broker, Mario Pena-Gonzales, demonstrating that the bonded cargo was actually logged in.

On November 20, 2003, Customs denied the supplemental petition because "[it] did not bring in new factors." Customs further demanded payment of the mitigated amount of $57,212, stating that failure to pay would result in "the appropriate action taken for collection of the full liabilities incurred." On March 3, 2004, C.H. Robinson paid the mitigated liquidated damages ($57,212) and subsequently brought the instant suit under the Tucker Act, 28 U.S.C. § 1491, seeking judicial review of Customs' allegedly wrongful demands for payment, and demanding a refund of the money paid.

## II. Jurisdiction

### A. Legal Standard

Subject matter jurisdiction may be challenged at any time by the parties, by the Court *sua sponte*, or on appeal. *Gen-Probe Inc. v. Vysis, Inc.*, 359 F.3d 1376, 1379 (Fed. Cir. 2004). When examining jurisdiction, matters outside the pleadings may be considered. *Cedars-Sinai Med. Ctr. v. Watkins*, 11 F.3d 1573, 1583-84 (Fed. Cir. 1993) (if jurisdiction is at issue, the Court need not be limited to the pleadings). The burden of establishing jurisdiction lies with the plaintiff. *See Rocovich v. United States*, 933 F.2d 991, 993 (Fed. Cir. 1991); *Reynolds v. Army & Air Force Exch. Serv.*, 846 F.2d 746, 748 (Fed. Cir. 1988). The correct approach to determining whether jurisdiction lies in the Court of Federal Claims or the Court of International Trade is to focus on whether the claim falls within the language of 28 U.S.C. § 1581(i). *Orleans Int'l., Inc. v. United States*, 334 F.3d 1375, 1378 (Fed. Cir. 2003). Because the jurisdiction of the Court of International Trade is exclusive in nature, this Court will have jurisdiction only if the action does not fall within the specific grants in 28 U.S.C. § 1581. *See also* 28 U.S.C. § 1491(c) ("[n]othing herein shall be construed to give [this Court] jurisdiction of any civil action within the exclusive jurisdiction of the Court of International Trade"). Although the Court of International Trade is the primary forum for hearing trade-related lawsuits, "Congress did not commit to the Court of International Trade's exclusive jurisdiction every suit against the Government challenging customs-related laws and regulations." *K-Mart Corp. v. Cartier, Inc.*, 485 U.S. 176, 188 (1988).

---

[2] The receipt stamps are generally used to confirm that the goods had been received by the Director of Customs in Laredo.

B. Jurisdictional Gap Noted in *Trayco*

The main dispute with respect to jurisdiction centers on the applicability of *Trayco, Inc. v. United States*, 994 F.2d 832 (Fed. Cir. 1993) ("*Trayco*"). *Trayco* involved an importer of shower heads whose product was seized at the Port of Charleston, South Carolina because the packaging of each individual shower head was not properly marked with the country of origin, as required by customs regulations. After the initial inspection, Customs released the shipment so that the importer could correct the deficiencies in the package marking. The importer certified to Customs that the corrections had been made, but a subsequent reinspection found that none of the boxes had been properly marked, so the shipment was constructively seized pursuant to 19 U.S.C. § 1592(c), which empowered Customs officials to seize shipments until a security deposit was paid to cover the penalty assessed for the violation.

In order to retake possession of the merchandise, the importer posted a $12,030.40 security deposit. The government then issued a pre-penalty notice to the importer stating that Customs was contemplating assessing a penalty based on the improper marking of the boxes of shower heads. The importer objected both in writing and orally to the pre-penalty notice, but to no avail. The government assessed a penalty of $12,030.40 under 19 U.S.C. § 1592(a) and (c) for gross negligence in failing to comply with Customs laws and regulations.

The importer brought suit under the Little Tucker Act, 28 U.S.C. § 1346 (a)(2), in district court. The government challenged the district court's jurisdiction, arguing that the matter fell with the CIT's exclusive residual jurisdiction as conferred by 28 U.S.C. § 1581(i). The district court held that it possessed jurisdiction, and Defendant challenged the ruling on appeal. The Federal Circuit held that because section 1581 lacked a specific jurisdictional grant for "a refund suit initiated by an importer against the United States," the case was properly filed in district court. In deciding the issue, the Federal Circuit noted a gap in the CIT's jurisdictional grant:

> A gap exists in the Court of International Trade's exclusive jurisdiction for an action brought by an importer against the United States for refund of a *penalty improperly assessed* and exacted under 19 U.S.C. § 1592(a), (c) (1988). The district court properly exercised jurisdiction under the Little Tucker Act, 28 U.S.C. § 1346(a)(2).

*Trayco*, 994 F.2d at 839 (emphasis added). Plaintiff maintains that *Trayco* is on all fours with the jurisdictional question in this case. It argues that like in *Trayco*, there is no specific CIT jurisdictional grant for actions based on the refund of payments in satisfaction of mitigated liquidated damages claims against carriers with a T&E bond. Defendant disputes this characterization, arguing that *Trayco* is distinguishable because C.H. Robinson is not seeking a refund of a penalty assessed under 19 U.S.C. § 1592 as was the case in *Trayco*, but rather seeks a refund of mitigated liquidated damages, of which a portion represents duties owed on the merchandise. Because Plaintiff is seeking a refund of duties paid, Defendant contends that the

claim falls within the residual jurisdiction of the Court of International Trade pursuant to 19 U.S.C. § 1581(i), which grants exclusive CIT jurisdiction over actions:

> against the United States . . . aris[ing] out of any law of the United States providing for-
>
> (1) revenue from imports or tonage;
>
> (2) tariffs, duties, fees, or other taxes on the importation of merchandise for reasons other than the raising of revenue;
>
> . . .
>
> (4) administration and enforcement with respect to the matters referred to in [(1) and (2)] . . . .

19 U.S.C. § 1581(i).

C. Is *Trayco* Controlling?

The government contends that this case falls within subsection (i)(4) of the statute, because the case arose out of a law providing for the administration and enforcement of duties on the importation of merchandise. More specifically, the government argues that the case arises out of 19 C.F.R. § 18.8, a regulation promulgated under authority granted by 19 U.S.C. § 1553.[3] Section 1553 states in relevant part:

> Any merchandise . . . may be entered for transportation in bond through the United States by a bonded carrier without appraisement or the payment of duties and exported under such regulations as the Secretary of the Treasury shall prescribe . . . .

19 U.S.C. § 1553(a). Defendant argues that in accordance with section 1553, Customs promulgated 19 C.F.R. § 18.8 which implements the statute by requiring that the "initial bonded carrier shall be responsible for shortage, irregular delivery, or nondelivery at the port of destination or exportation of bonded merchandise received by it for carriage." 19 C.F.R. § 18.8(a). Under subsections (b) and (c), Customs further provided that the bonded carrier would be liable for payment of liquidated damages under the carrier bond for failure to meet its responsibilities, and would further be liable for actual duties on the merchandise.

---

[3] Section 18.8 was actually promulgated under the authority of several statutes: 5 U.S.C. § 301; 19 U.S.C. §§ 66, 1202 (General Note 23, Harmonized Tariff Schedule of the United States), 1551, 1552, 1553, 1623, and 1624.

According to Defendant, the "purpose of this regulation was to ensure that the carrier indeed exported the bonded merchandise that was claimed exempt from duties, and to prevent any carriers from avoiding the payment of duties through the bonded carrier exception." (Def.'s Mot. at 8.) Thus, in arising under 19 C.F.R. § 18.8, which was promulgated under the authority granted by 19 U.S.C. § 1553, the claim in this case is derived from a law providing for the enforcement of duties on the importation of merchandise. Accordingly, Defendant argues, the claim falls within the exclusive jurisdiction of the CIT as defined by 28 U.S.C. § 1581(i).

Defendant's argument suffers from two fundamental problems. First, Defendant's argument seems to assume the conclusion, and fails to point to anything in either the text of the statute or the legislative history, that specifically supports its characterization of the purpose for the regulation and statute. Starting with the statute at issue, it seems clear that section 1553 by its very language deals with exemption from duties, rather than the enforcement and administration of duties. *See* 19 U.S.C. § 1553(a) ("merchandise . . . may be entered . . . without . . . payment of duties and exported . . . ."). Moreover, section 1484 of the same title, which governs the entry of merchandise and directs importers to provide the "information as is necessary to enable the Customs Service to . . . properly assess duties on the merchandise," specifically excludes section 1553 from its purview. *See* 19 U.S.C. § 1484 ("Except as provided in sections 1490, 1498, 1552, and 1553 of this title . . ."). Thus, the statute is properly characterized as providing an exemption from duties, rather than providing for enforcement and administration of duties.

1. Nature of the Payment - Duty or Penalty?

A close reading of *Trayco* leads to the conclusion that its applicability to this case depends upon whether the mitigated liquidated damages payment that was proffered by Plaintiff was in the nature of a duty (which would place it within the exclusive jurisdiction of the CIT), or whether it is more accurately described as a penalty, which would make it analogous to *Trayco*, and properly before this Court.

Defendant contends that even if the penalty assessed under section 18.8 does not fall within the jurisdiction provided by section 1581(i), the mitigated penalty of $57,212 that was paid by Plaintiff was calculated to include the value of duties that C.H. Robinson would have owed on the bonded merchandise and thus should fall within the CIT's exclusive jurisdiction. Defendant points to Customs' mitigation guidelines which allow the claim for mitigated damages to be canceled upon payment of a liquidated amount equal to the duties, fees, taxes and charges that would have been due on the merchandise plus an additional $300 to $2500, based on the presence of aggravating or mitigating factors. According to Defendant, because the mitigated amount "partially represents the duties for which C.H. Robinson was liable, this suit arises out of the administration and enforcement of laws providing for duties." (Def.'s Mot. at 10.)

Although a close question, the Court finds that the payment is more accurately characterized as a penalty.[4] As noted above, *Trayco* essentially held that if the importer is challenging the legality of a penalty imposed and assessed under the customs laws, it falls into the gap in the CIT jurisdictional grant. Defendant attempts to characterize Plaintiff's payment as a payment of duties and argues that the fact that *Trayco* arose under 19 U.S.C. § 1592, and this case arises under 19 U.S.C. § 1553, is a critical distinction. Although section 1592 deals explicitly with penalties, a careful analysis of the statutory and regulatory framework demonstrates that the payment made by Plaintiff in this case is also a penalty, and thus within the parameters established by *Trayco*.

19 C.F.R. § 18.8 reads in relevant part:

> (a) The initial bonded carrier shall be responsible for shortage, irregular delivery, or nondelivery at the port of destination or exportation of bonded merchandise received by it for carriage. . . .
>
> (b) Carriers shall be liable for payment of liquidated damages under the carriers bond for any shortage, failure to deliver, or irregular delivery, as provided in such bond.
>
> (c) In addition to the *penalties* described in paragraph (b) of this section, the carrier shall pay any internal-revenue taxes, duties, or other taxes accruing to the United States on the missing merchandise . . . .
>
> (d) In any case in which liquidated damages are imposed in accordance with this section and the Fines, Penalties, and Forfeitures Officer is satisfied by evidence submitted to him with a petition for relief filed in accordance with the provisions of Part 172 of this chapter . . . [he] may cancel such claim upon the payment of any lesser amount or without the payment of any amount as may be deemed appropriate under the law and in view of the circumstances.

19 C.F.R. § 18.8 (emphasis added). There is ample evidence in the language of the statute and its corresponding regulations indicating that liquidated damages are penal in nature. In contrast,

---

[4] The Court's reasoning is based on the rule set forth in *Trayco*, and the fact that it is binding authority on this court. The Court recognizes, however, that *Trayco* and its progeny have led to the development of "very unsettled legal landscape with regard to jurisdiction over suits by importers to recover or avoid duties or penalties . . . ." *Bridalane Fashions, Inc. v. United States*, 32 F. Supp.2d 466, 467 (Ct. Intl. Trade 1998).

there is little evidence in the statute or regulations that the liquidated damages are payments for import duties.[5] In fact, liquidated damages are characterized as penalties throughout the statutory framework. For example, in section 18.8(b), the regulation states that "[c]arriers shall be liable for payment of liquidated damages under the carriers bond for any shortage, failure to deliver, or irregular delivery, as provided in such bond." Section 18.8(c) adds that "[i]n addition to the *penalties* described in paragraph (b) of this section, the carrier shall pay any internal-revenue taxes, *duties*, or other taxes accruing to the United States on the missing merchandise . . . ." (emphasis added). Further evidence that the liquidated damages are penal in nature is found in section 18.8(e)(1), which describes payments made under the section as "[p]enalties imposed as liquidated damages . . . ."

Defendant argues that when Plaintiff chose to pay the mitigated liquidated damages amount, that payment included a portion for duties owed on the merchandise. Thus, even if the original assessment of liquidated damages was penal in nature, the mitigated liquidated damages amount was not. Defendant points to Customs' mitigation guidelines, which provide:

> [i]f the merchandise which was not delivered, delivered short or delivered directly to the consignee was not designated for Customs examination and the in-bond carrier cannot show that the merchandise was not entered and duties, fees, taxes and charges paid thereon . . . or that the merchandise was exported . . . the claim for liquidated damages may be canceled upon payment of an amount equal to the duties, fees, taxes and charges that would have been due on the merchandise had entry been properly made plus an amount between $300 and $2,500, depending on the presence of aggravating or mitigating factors.

(Def.'s Mot. Appendix at 32.) There are two fundamental problems with Defendant's position. First, the recited guidelines only use the amount of duties owed as part of an equation or mechanism for determining an appropriate mitigated liquidated damages offer. The guidelines do not change the nature of the payment. The fact that the payment is a penalty is further evidenced by the language of 19 C.F.R. § 172.11 which states that Customs "is empowered to mitigate any penalty or cancel any claim for liquidated damages on such terms and conditions as, under law and in view of the circumstances, he . . . shall deem appropriate . . . ." Thus, the regulation governing mitigation makes no mention of duties, nor does it contemplate that the amount of duties owed should even play a role in the mitigation determination. Second, even if the Court were to accept Defendant's argument that the language above indicates that the

---

[5] Although Defendant points to section 18(c) as evidence that section 18.8 is a law providing for the enforcement of duties, the statute construed in *Trayco* had a similar provision and was not characterized as providing for the enforcement of duties. *See* 19 U.S.C. § 1592(d) ("[T]he Customs Service shall require that such lawful duties, taxes, and fees be restored, whether or not a monetary penalty is assessed.").

mitigated payment partially represents duties for which Plaintiff was liable, guidelines such as these lack the force of law. *Christensen v. Harris County*, 529 U.S. 576 (2000). Nothing in sections 18.8 or 172.11 indicates that a payment of mitigated liquidated damages is anything more than a reduced liquidated damages penalty made *in lieu* of duties that might have been owed on merchandise.

In view of the above, the Court finds that the payment of mitigated liquidated damages made by Plaintiff was penal in nature. Accordingly, *Trayco* is applicable to the jurisdictional arguments herein, and the Court of Federal Claims has jurisdiction over this case.

## III. Waiver

Defendant also seeks dismissal under RCFC 12(b)(6), alleging that Plaintiff has failed to state a claim upon which relief can be granted because it has waived its right to judicial review by paying the mitigated liquidated damages.

### A. Legal Standard and Applicable Regulations

Pursuant to RCFC 12(b)(6), the Court is required to grant Defendant's motion to dismiss if it finds that Plaintiff has failed to state a claim upon which relief can be granted. In ruling on a motion to dismiss, the Court must "treat all of the well-pleaded allegations of the complaint as true." *See Miree v. DeKalb County*, 433 U.S. 25, 27 n. 2, 97 S.Ct. 2490, 53 L.Ed.2d 557 (1977); *Reynolds v. Army & Air Force Exch. Serv*., 846 F.2d 746, 747 (Fed. Cir. 1988). "[A] complaint should not be dismissed unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" *McLain v. Real Estate Bd. of New Orleans, Inc.*, 444 U.S. 232, 246, 100 S.Ct. 502, 511, 62 L.Ed.2d 441 (1980) (*quoting Conley v. Gibson*, 355 U.S. 41, 45-46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957)).

As discussed above, 19 C.F.R. § 18.8 provides the framework and standard under which liquidated damages are imposed for failure to abide by the requirements of 19 U.S.C. § 1553. Section 18.8(d) describes how these penalties should be imposed:

> In any case in which *liquidated damages are imposed* in accordance with this section and the Fines, Penalties, and Forfeitures Officer is satisfied by evidence submitted to him with a petition for relief filed in accordance with the provisions of *Part 172* of this chapter that any violation of the terms and conditions of the bond occurred without any intent to evade any law or regulation, the Fines, Penalties, and Forfeitures Officer, in accordance with delegated authority, *may cancel such claim upon the payment of any lesser amount* or without the payment of any amount as may be deemed appropriate under the law and in view of the circumstances.

19 C.F.R. § 18.8(d) (emphasis added). In accordance with this section, the procedures for the notice, application, protestation and mitigation of liquidated damages or penalty assessments is governed by 19 C.F.R. § 172. Section 172.22(b), the subsection primarily at issue, states in relevant part:

> Payment of mitigated or cancellation amount as accord and satisfaction. *Payment of a mitigated or cancellation amount* in compliance with an administrative decision on a petition or supplemental petition for relief *will be considered an election of administrative proceedings and full disposition of the case*. Payment of a mitigated or cancellation amount *will act as an accord and satisfaction* of the Government claim. Payment of a mitigated or cancellation amount will never serve as a bar to filing a supplemental petition for relief.

19 C.F.R. § 172.22(b) (emphasis added).

B. Defendant's Arguments

Defendant argues that Plaintiff is barred from bringing this claim because it elected administrative proceedings by paying the mitigated liquidated damages amount to Customs in accordance with section 172.22(b). Defendant argues that because Plaintiff had notice that the payment of the mitigated amount would constitute an accord and satisfaction, it knowingly waived its right to judicial review. As a result, the Court should not entertain Plaintiff's claim for a refund of the mitigated liquidated damages.

Defendant further argues that Plaintiff in this case did not expressly reserve its right to judicial review as did the plaintiff in *Trayco.* As a result, Defendant argues, *Trayco* does not apply to the issue of waiver in this case.

C. Plaintiff's Arguments

Plaintiff argues that it has a justiciable claim because Defendant's interpretation of 19 C.F.R. § 172.22 does not properly view the language in the context of the entire regulation. Plaintiff first argues that when viewing section 172.22 in its entirety, it becomes clear that the regulation speaks only to Customs' administrative processes, and should not be construed to affect a party's right to judicial review. Plaintiff notes that section 172.22 is the second section in Subpart C of 19 C.F.R. § 172, and is titled "Decisions not protestable." This title, according to Plaintiff, implies that the regulation deals only with the administrative petition process, and not with judicial review.

Plaintiff further argues that a full reading of the amendments made to Section 172.22 as a result of the decision in *Trayco* demonstrates that Customs' intent in adding the "accord and satisfaction" language was to preclude an importer from challenging claims by filing administrative protests once liquidated damages were paid. Plaintiff also contends that the effect of Defendant's reading of section 172.22 would result in a situation where an administrative agency, by regulation, has limited the jurisdiction of a federal court.

Finally, Plaintiff points to the language of *Trayco* in support of its position:

> [T]he statute and regulations are silent regarding the availability of (or preclusion of) judicial review after administrative remedies are exhausted. 19 U.S.C. § 1618; 19 C.F.R. § 171.33. In light of the fact that nothing in the statute or regulations gives notice that a party may relinquish its rights to judicial review by paying a mitigated penalty and filing a second supplemental petition, we decline to hold that *Trayco* is estopped where it accompanied its payment with a statement expressly reserving its rights to judicial review.

*Trayco*, 994 F.2d at 839. Plaintiff contends that in spite of the amendments made to the regulation subsequent to *Trayco*, section 172.22 still remains silent on preclusion of judicial review.

D. Analysis

Plaintiff's response makes clear that it is not challenging the existence of an accord and satisfaction if the Court finds that section 172.22 provided adequate notice that its payment of the mitigated damages penalty would foreclose judicial review. Thus, the precise issue before the Court is whether section 172.22, as amended in response to *Trayco*, provided Plaintiff with adequate notice that in accepting the offer of reduced damages, it was giving up its right to subsequent judicial review. Contrary to Plaintiff's suggestion to the contrary, this is not a case where an agency is changing the jurisdiction of a federal court by regulation. It seems clear to the Court that the forbearance of judicial review is part of a bargained-for exchange that results from offer and acceptance of a reduced (i.e. mitigated) penalty amount. This is no different than a typical settlement of a case in which a defendant pays a plaintiff an amount less than claimed in exchange for the plaintiff not pursuing further action in the courts.

1. Did Section 172.22 Provide Adequate Notice of Foreclosure of Judicial Review as Required by *Trayco* ?

In *Trayco*, the Federal Circuit found that because the regulation was silent as to the availability of judicial review, an agreement between the parties to preclude judicial review could not be implied. Subsequent to that decision, the regulation was amended, ostensibly to address

this deficiency and expressly address the issue of judicial review. Plaintiff contends that the amended language still fails to adequately place parties on notice that the opportunity for judicial review would be precluded by payment of a mitigated amount.

Although regulation as amended remains void of any explicit reference to judicial review, the Court nevertheless finds that language in the regulation is sufficient to provide the notice lacking in *Trayco*. Section 172.22(b) states:

> Payment of mitigated or cancellation amount as accord and satisfaction. Payment of a mitigated or cancellation amount in compliance with an administrative decision on a petition or supplemental petition for relief will be considered an election of administrative proceedings and full disposition of the case. Payment of a mitigated or cancellation amount will act as an accord and satisfaction of the Government claim. Payment of a mitigated or cancellation amount will never serve as a bar to filing a supplemental petition for relief.

19 C.F.R. § 172.22(b). Plaintiff concedes that the above language constitutes at least an accord and satisfaction of administrative claims: "'accord and satisfaction' language in Section 172.22(b) speaks only to the resolution of the administration petition process." (Pl.'s Resp. at 13.) The more important question is whether the regulation is sufficiently clear that a reasonable person in Plaintiff's position should have been on notice that paying the mitigated amount would result in a foreclosure of judicial review of the legality of the underlying penalty.

Black's Law Dictionary defines "accord and satisfaction" as follows:

> An agreement to substitute for an existing debt some alternative form of discharging that debt, coupled with the actual discharge of the debt by the substituted performance. The new agreement is called the accord, and the discharge is the satisfaction.

BLACK'S LAW DICTIONARY, Seventh Ed. at 17. The Federal Circuit has stated that "[a] claim is discharged by the doctrine of accord and satisfaction when 'some performance different from that which was claimed as due is rendered and such substituted performance is accepted by the claimant as full satisfaction of his claim.'" *O'Connor v. United States*, 308 F.3d 1233, 1240 (Fed. Cir. 2002) (quoting *Case, Inc. v. United States*, 88 F.3d 1004, 1011 n.7 (Fed. Cir. 1996) (quoting *Cmty. Heating & Plumbing, Co. v. Kelso*, 987 F.2d 1575, 1581 (Fed. Cir. 1993))). From these definitions, it seems clear that the understood meaning of accord and satisfaction is that all future claims involving the subject matter of the "accord" are permanently released. Especially telling is the Federal Circuit's reference to the "full satisfaction" of the claim. *Id.* If a claim is fully satisfied, it is hard to imagine an instance where one party can reopen the dispute at a later time.

2. Did Plaintiff's Failure to Make the Payment "Under Protest" Make *Trayco* Inapplicable?

In *Trayco*, the Federal Circuit held:

> In light of the fact that nothing in the statute or regulations gives notice that a party may relinquish its rights to judicial review by paying a mitigated penalty and filing a second supplemental petition, we decline to hold that Trayco is estopped where it accompanied its payment with a statement *expressly reserving its rights to judicial review*.

*Trayco*, 994 F.2d at 839 (emphasis added). This statement strongly suggests that the fact that the plaintiff in *Trayco* expressly reserved its right to judicial review was crucial to the Federal Circuit's holding in the case. Here, Plaintiff did not set forth a similar reservation of rights. Defendant argues that because it did not pay its mitigated penalty under protest, Plaintiff's reliance on *Trayco* is misplaced. The Court agrees. Even if the Court were to find that the amended regulations were not sufficiently clear to provide notice that Plaintiff relinquished its right to judicial review, it seems clear that the rule set forth in *Trayco* includes an additional requirement that was not met in this case - the express reservation of a right to judicial review.

3. Was the Accord and Satisfaction Based on a Mutual Mistake?

An accord and satisfaction is a contract for substituted performance. The existence of a contract is a mixed question of law and fact. *Cienega Gardens v. United States*, 194 F.3d 1231, 1239 (Fed. Cir. 1998). An accord and satisfaction, like any contract, can be set aside, in whole or in part, for such reasons as mutual mistake, supervening illegality, or frustration of purpose. *Wallace Hardware Co. v. Abrams*, 223 F.3d 382, 408 (6th Cir. 2000) (*citing* RESTATEMENT (SECOND) OF CONTRACTS §§ 152, 264, 265). To establish a mutual mistake of fact, it must be demonstrated that (1) the parties to the contract were mistaken in their belief regarding a fact; (2) the mistaken belief constituted a basic assumption underlying the contract; (3) the mistake had a material effect on the bargain; and (4) the contract did not put the risk of the mistake on the party seeking reformation. *Dairyland Power Coop. v. United States*, 16 F.3d 1197, 1202 (Fed. Cir. 1994).

In a footnote in its original brief, the government notes that Customs should have been limited to a total of $25,000 of liquidated damages. (Def.'s Mot. n.1 at 4-5.) Although not explicitly stated, it seems clear that the liquidated damages were limited to $25,000 because the government held only a single $25,000 surety bond from Plaintiff. Defendant further states in the footnote that because it was limited to $25,000 in liquidated damages, it should not have demanded $57,212 as mitigated liquidated damages. (Def.'s Mot. n.1 at 5.) As a result, it seems clear from the pleadings and the motions that the parties agree that the liquidated damages penalty should have been limited to $25,000. It also seems clear that at the time the mitigated

damages proposal was offered and accepted, the parties mistakenly believed that the owed liquidated damages were $75,000 rather than $25,000 which was the actual amount owed.

The situation described above suggests that the doctrine of mutual mistake might apply to this case. The parties' belief that $75,000 in liquidated damages were owed could have been a basic assumption underlying the contract because the mitigated damages amount was calculated based on the mistaken belief that there were three distinct customs bonds totaling $75,000. The mistake could have had a material effect on the bargain because Plaintiff wrongly believed that by not agreeing to the mitigated damages accord, it risked the loss of $75,000 in liquidated damages, rather than $25,000 which was its actual exposure. Thus, it is certainly possible that if Plaintiff believed that it only was risking $25,000 in liquidated damages, it would have refused to pay the mitigated amount. Finally, nothing in the regulations governing liquidated damages indicates that the risk of mistake is on Plaintiff.

If this accord and satisfaction was entered into on the basis of a mutual mistake, the question arises as to whether the agreement, as a matter of law, should be reformed or rescinded by applying established principles of law. *Pacific Alaska Contractors, Inc. v. United States*, 436 F.2d 461, 472 (Ct. Cl. 1971). As noted above, the standard for a RCFC 12(b)(6) motion requires that the complaint not be dismissed unless it appears beyond doubt that the Plaintiff can prove no set of facts in support of his claim which would entitle it to relief. *See McLain ,* 444 U.S. at 246. Based on the facts as alleged in the complaint, and the parties apparent agreement that they mistakenly believed that Plaintiff owed $75,000 in liquidated damages under the T&E Bond, the Court cannot say that it appears beyond doubt that Plaintiff cannot prove a set of facts which will entitle it to the refund it seeks. In particular, if Plaintiff can show that it would not have entered the accord and satisfaction but for the mistaken belief as to the liquidated damages owed under the T&E Bond, it might be entitled to a reformation or rescission of the accord and satisfaction. *See Dairyland Power Coop.*, 16 F.3d at 1202 (citing *Roseburg Lumber Co. v. Madigan*, 978 F.2d 660, 665 (Fed. Cir. 1992)).

## IV. Conclusion

Because this case falls within the jurisdictional gap identified in *Trayco*, the Court of Federal Claims has jurisdiction over this case. Accordingly, Defendant's Motion to Dismiss under RCFC (12)(b)(1) for lack of jurisdiction is DENIED. Although Plaintiff's payment of mitigated liquidated damages constituted an accord and satisfaction under the applicable regulations, the parties might have entered the accord and satisfaction under a mutual mistake of material fact. Because it is not beyond doubt the Plaintiff cannot prove a set of facts entitling it to relief, the Defendant's Motion to Dismiss under RCFC 12(b)(6) for failure to state a claim is also DENIED.

In view of the foregoing, the Court hereby ORDERS that Plaintiff is granted leave to amend its complaint to allege mutual mistake if it so chooses, provided that it does so no later than April 20, 2005. Defendant is ORDERED to file an answer to Plaintiff's complaint on or before May 31, 2005.

s/ Edward J. Damich
Edward J. Damich
Chief Judge